**FALMOUTH MARINE RAILWAYS, INC., Libelant,**

v.

**YACHT JIM BEA, etc., and James Salah, Respondents.**

Civ. A. No. 68-893-C.

United States District Court
D. Massachusetts.

Oct. 3, 1969.

David M. Roseman, Tyler & Reynolds, Boston, Mass., for plaintiff.

John F. Finnerty, Boston, Mass., for defendants.

## OPINION

CAFFREY, District Judge.

This is an action of contract, civil and maritime, filed October 4, 1968, in which libelant, Falmouth Marine Railways, Inc., seeks to recover against the Yacht JIM BEA and her owner, James Salah, the sum of $3579.58, for materials, supplies, repairs, labor and other necessaries provided to the JIM BEA by libelant during the period January 1968 through August 1968.

Subsequent to the filing of this suit a motion for storage without keepers and port risk insurance was allowed by this court and thereafter the United States Marshal for this district seized the yacht and placed her in libelant's boatyard without keepers but with port risk insurance.

The respondents answered on October 11, 1968, but six months later, on April 11, 1969, filed a motion to amend their answer by adding a counterclaim asserting that while the yacht was in the custody and control of libelant certain personal property allegedly of a value of $2279.00 was stolen therefrom. The motion to file the counterclaim was allowed. This counterclaim was subsequently amended and libelant's answer to the counterclaim denied the material allegations thereof.

After trial, I find and rule as follows:

James Salah, at all times material to the controversy herein, was the owner of a 38-ft. Pacemaker motor yacht called the JIM BEA. Mr. Salah made arrangements in the fall of 1967 with Alan F. Robbins, Vice President and Service Manager of Falmouth Marine Railways, Inc., for winter storage of his yacht at the Falmouth Marine Railways in Falmouth, Massachusetts, during the winter months of 1967–1968.

Following its usual procedure, libelant then sent a "Winter Storage Sheet," in duplicate, to Mr. Salah, on which form it itemized its recommendations for work to be done on the vessel before commissioning her for the coming season. Mr. Salah checked off those portions of suggested work that he wished to be done, signed the form, and returned it to libelant. There is no issue between the parties as to the fact that thereafter libelant did the work in a workmanlike fashion, although there is a dispute between the parties as to four or five of the items on the Winter Storage Sheet, as to whether or not the check-mark opposite or nearly opposite those items actually refers to the particular item.

The basic controversy between the parties is as to the fair and reasonable value of the work that was done. The crux of respondents' complaint is that libelant substantially overcharged him for the labor involved, in view of the evidence that the employees of libelant who actually worked on the yacht were compensated at rates varying from $2.25 to $3.50 per hour and in view of the further fact that libelant billed respondent for labor at the rate of $8.50 per hour.

Libelant's claim for $3579.58 is made up of an item of $2950.05 for 324.4 hours of labor, $459.96 for materials, $13.73 for taxes, $155.84 for miscellaneous items such as lettering, gasoline, telephone, postage, etc., and $192.65 for overtime at the rate of $11.50 per hour. Libelant's service manager testified that he felt that all of the charges were eminently fair and reasonable, and libelant also called as a witness a marine surveyor who testified that in his opinion all of the charges other than the overtime charge were fair and reasonable, with the caveat that the overtime charge was

fair and reasonable if requested specifically by the owner of the vessel but not otherwise. The respondent Mr. Salah testified that he was in the contracting business and that he considered the markup on labor to be exorbitant. He did not challenge the items for materials, taxes, etc.

On all the evidence I find that the parties entered into a contract under which Mr. Salah requested libelant to perform each of the items listed under E–702 through E–726 on Plaintiff's Exhibit 1. I further find that the contract did not contain an itemization of the charges to be rendered but that the parties intended that libelant be paid the fair and reasonable value of the services and material rendered. I reject respondent's contention that Items 705, 711, 712, 713, 715, 717 and 721 were not ordered by him, and I find, on the basis of Plaintiff's Exhibit 6, that such items were in fact included in the contract. I likewise fail to credit respondent's testimony that he had asked for an estimate on two occasions and was unwilling to authorize the work unless and until he received the same.

On all the evidence I find that the charges made by libelant to respondents for labor, material, taxes, and other miscellaneous charges, as appear more specifically in Plaintiff's Exhibit 1, were fair and reasonable, with the exception of the item of overtime in the amount of $192.65, which I totally disallow because of the failure of libelant to show that Mr. Salah ever requested or authorized any overtime work to be performed in connection with the JIM BEA. Consequently, libelant is entitled to recover on its complaint $3386.93.

With respect to the counterclaim, as to which libelant filed a motion to dismiss at the conclusion of the evidence, I rule that respondent has failed to sustain his burden of proving that the items allegedly stolen which he says were aboard the yacht when he last saw her at the slip where she was tied up in Falmouth prior to her seizure were still aboard when she was seized by the United States Marshal and delivered to libelant's yard. Respondents have likewise failed to sustain their burden of proving the fair and reasonable value of these articles if they had been aboard and I am affirmatively persuaded by the testimony of F. W. Wormell, Jr., President of libelant corporation, that these items were not aboard the yacht at the time he inspected her when she was placed in his custody, even though they may have been aboard when Mr. Salah last saw the vessel at Slip No. 44 of the Falmouth Town Dock some three to six days prior to the Marshal's seizure thereof.

Judgment will enter for the libelant in the amount of $3386.93, with interest and costs, and dismissing respondents' counterclaim.